MILES D. FREEMAN, SBN 299302
mfreeman@ftc.gov
CARLA L. CHEUNG, SBN 291562
ccheung1@ftc.gov
SIOBHAN C. AMIN, SBN 308416
samin@ftc.gov
JOHN D. JACOBS, SBN 134154
jjacobs@ftc.gov
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

[Additional Attorneys for Plaintiffs & Defendants Listed on Signature Pages]

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION; and THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiffs,

v.

NGL LABS, LLC, a corporation;

RAJ VIR, individually and as an officer of NGL LABS, LLC; and

JOAO FIGUEIREDO, individually and as an officer of NGL LABS, LLC,

Defendants.

Case No. 2:24-cv-5753

**STIPULATION AS TO ENTRY OF ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF**

Plaintiffs the Federal Trade Commission ("FTC" or "the Commission") and the People of the State of California, by and through the District Attorney of Los Angeles County (collectively, "Plaintiffs"), filed their Complaint for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, and Other Relief ("Complaint") pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, and the California False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq*. Defendants have waived service of the summons and the Complaint.

Plaintiffs and Defendants have agreed to the entry of the attached Stipulated Order for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, and Other Relief to resolve all matters in dispute in this action between them.

Plaintiffs and Defendants have consented to entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, and Other Relief without trial or adjudication of any issue of law or fact herein. Plaintiffs and Defendants hereby stipulate to entry of a Stipulated Order for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, and Other Relief with the following terms:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that the Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 84034, Sections 1303(c) and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c), 6505(d), and Sections 17200 and 17500 of the California Business and Professions Code, Cal. Bus. &

Prof. Code §§ 17200, 17500, in the development, design, marketing, distribution, sale, and operation of the NGL App and NGL Pro.

3. Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4. Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. "**Anonymous Messaging App**" means a Messaging App that includes a way to send and receive messages that do not reveal the identity of the sender.

B. "**App Store**" means any third-party service where apps are purchased, downloaded or obtained, including, but not limited to, the Apple App Store and the Google Play Store.

C. "**Charge**," "**Charged**," or "**Charging**" means any attempt to collect money or other consideration from a consumer, including causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, telephone bill, or other account.

D. "**Child**" or "**Children**" means an individual or individuals under the age of 13.

E. "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.
2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.
3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.
4. In any communication using an interactive electronic medium, such as the Internet, an app, or software, the disclosure must be unavoidable. A disclosure is not Clear and Conspicuous if a consumer must take any action, such as clicking on a hyperlink or hovering over an icon, to perceive and understand it.
5. The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.
6. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.
7. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes members of that group.

F. "**Collects**," "**Collected**," "**Collecting**," or "**Collection**" means the gathering of any Personal Information from a Child by any means, including:

1. Requesting, prompting, or encouraging a Child to submit Personal Information online;

2. Enabling a Child to make Personal Information publicly available in identifiable form. An Operator shall not be considered to have Collected Personal Information under this paragraph if it takes reasonable measures to delete all or virtually all Personal Information from a child's postings before they are made public and also to delete such information from its record; or

3. Passive tracking of a Child online.

G. "**Corporate Defendant**" means NGL Labs, LLC and its successors and assigns.

H. "**Defendants**" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

I. "**Individual Defendants**" means Raj Vir and Joao Figueiredo.

J. "**Messaging App**" means any software application that can be transmitted or downloaded to any computing device including any desktop computer, laptop computer, smartphone, tablet, wearable, or sensor, or any periphery of any portable computing device, and which allows a user of the software application to send or receive messages.

K. "**Negative Option Feature**" means a provision of a contract under which the consumer's silence or failure to take affirmative action to reject a good

or service or to cancel the agreement is interpreted by the negative option seller or provider as acceptance (or continuing acceptance) of the offer.

L. "**Neutral Age Screen**" means that Users of a Covered Business are asked age information in a neutral manner, making sure the data entry point (i) allows Users to enter their age by month and year of birth accurately, (ii) does not default to an age 18 or over, (iii) avoids encouraging Users to falsify age information by, for example, stating that certain features will not be available to Users under age 18; and (iv) utilizes where feasible technical means to prevent back-buttoning or similar User attempts to evade age rules.

M. "**Obtain, Obtained, or Obtaining Verifiable Parental Consent**" means making any reasonable effort (taking into consideration available technology) to ensure that before Personal Information is Collected from a Child, a Parent of the Child:

1. Receives notice of the Operator's Personal Information Collection, use, and Disclosure practices; and
2. Authorizes any Collection, use, or disclosure of the Personal Information.

N. "**Online Contact Information**" means an email address or any other substantially similar identifier that permits direct contact with a person online, including an instant messaging user identifier, a voice over internet protocol (VOIP) identifier, or a video chat user identifier.

O. "**Operator**" means any person who operates a website located on the Internet or an online service and who Collects or maintains Personal Information from or about the users of or visitors to such website or online service, or on whose behalf such information is Collected or maintained, or offers products or services for sale through that website or online service, where such website or online service is operated for commercial purposes involving commerce among the

several States or with 1 or more foreign nations; in any territory of the United States or in the District of Columbia, or between any such territory and another such territory or any State or foreign nation; or between the District of Columbia and any State, territory, or foreign nation. This definition does not include any nonprofit entity that would otherwise be exempt from coverage under Section 5 of the Federal Trade Commission Act (15 U.S.C. 45). Personal information is Collected or maintained on behalf of an Operator when:

1. It is Collected or maintained by an agent or service provider of the Operator; or
2. The Operator benefits by allowing another person to Collect Personal Information directly from users of such website or online service.

P. "**Parent**" includes a legal guardian of a Child.

Q. "**Personal Information**" means individually identifiable information about an individual Collected online, including:

1. A first and last name;
2. A home or other physical address including street name and name of a city or town;
3. Online Contact Information;
4. A screen or user name where it functions in the same manner as Online Contact Information;
5. A telephone number;
6. A Social Security number;
7. A persistent identifier that can be used to recognize a user over time and across different websites or online services. Such persistent identifier includes a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;

8. A photograph, video, or audio file where such file contains a Child's image or voice;

9. Geolocation information sufficient to identify street name and name of a city or town; or

10. Information concerning the Child or the Parents of that Child that the Operator Collects online from the Child and combines with an identifier described in this definition.

R. "**Teen**" means an individual at or over the age of 13 but under the age of 18.

## ORDER

## I. BAN ON OFFERING OR PROMOTING ANONYMOUS MESSAGING APPS TO USERS UNDER THE AGE OF 18

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with developing, distributing, promoting, or offering for sale any Anonymous Messaging App are permanently restrained and enjoined from:

A. Failing to employ a Neutral Age Screen to restrict access to or use of the Anonymous Messaging App to persons 18 years old or older;

B. Failing to require users who created an account prior to entry of this Order to pass the Neutral Age Screen prior to accessing or using an Anonymous Messaging App;

C. Failing to bar users who indicate that they are under the age of 18 from further access to or use of the Anonymous Messaging App; and

D. Engaging in any marketing or advertising activities that are directed to Children or Teens, including efforts to promote or advertise the Anonymous Messaging App to students at elementary, middle, or high schools.

## II. PROHIBITIONS AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with developing, distributing, promoting, or offering for sale any product or service are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A. That messages that a user will receive through a Messaging App will be from friends, social media contacts, or other live persons;

B. That any given message that a user received through a Messaging App was sent by a friend, social media contact, or other live person;

C. That consumers who download, use, or purchase a Messaging App or any product or service related to a Messaging App will be able to see the identity or screen name of people who sent them anonymous messages;

D. That cyberbullying will be completely or mostly filtered out through the use of content moderation or artificial intelligence;

E. The capabilities of any artificial intelligence or machine learning technology;

F. Any other fact material to consumers concerning any product or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## III. PROHIBITIONS AGAINST MISREPRESENTATIONS RELATED TO NEGATIVE OPTIONS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly

or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A. The nature, quality, or effectiveness of the good or service that is offered in connection with the Negative Option Feature;

B. That a good or service is offered as a free trial or for a fixed cost, including where a Charge will be assessed pursuant to the offer unless the consumer takes steps to prevent or stop such a Charge before a certain date or time;

C. The date by which the consumer may be Charged unless the consumer takes steps related to the Negative Option Feature;

D. Any material fact related to the transaction, such as the Negative Option Feature;

E. Any material fact related to an underlying good or service; or

F. Any other material fact.

## IV. DISCLOSURES REQUIRED BY A NEGATIVE OPTION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from or assisting others from:

A. Offering any good or service with a Negative Option Feature, without first disclosing Clearly and Conspicuously, and immediately adjacent to the means of recording the consumer's consent for the Negative Option Feature:

1. That the consumer will be Charged for the good or service, or that the Charge will increase after any applicable trial period ends, and, if applicable, that the Charge will be on a recurring basis, unless the consumer timely takes steps to prevent or stop such Charges;

2. Each deadline (by date or frequency) by which the consumer must act to prevent or stop the Charges;

3. The amount (or range of costs) the consumer will be Charged, and, if applicable, the frequency of such Charges a consumer will incur unless the consumer timely takes steps to prevent or stop those Charges;

4. The date (or dates) each charge will be submitted for Charging;

B. Offering any good or service with a Negative Option Feature, without first disclosing Clearly and Conspicuously, and separate from the disclosures required by all the preceding sub-provisions of this Section:

1. The information necessary for the consumer to cancel the Negative Option Feature, including the simple mechanism to stop the Charges; and

2. Any material term related to the underlying good or service that is necessary to prevent deception, regardless of whether that term directly relates to the Negative Option Feature;

C. Representing directly or indirectly, expressly or by implication, that any good or service with a Negative Option Feature is being offered on a free, trial, no obligation, reduced, upgraded, or discounted basis, or for a trial or promotional period, without disclosing Clearly and Conspicuously, and immediately adjacent, to any such representation:

1. The steps the consumer must take to avoid any Charges: (a) for the offered good or service, (b) of an increased amount after a trial or promotional period ends, and (c) on any subsequent or recurring basis;

2. Each deadline (by date or frequency) by which the consumer must affirmatively act to stop each Charge; and

3. The total amount (or range of costs) the consumer will be Charged, and, if applicable, the frequency of Charges unless the consumer timely takes steps to prevent or stop those Charges; and

D. Charging without having notified the consumer, immediately after agreement to the Negative Option Feature, of confirmation by app notification or email. The notification or email subject line must begin: "Order Confirmation" and the name of the good or service, and no additional information. The email or notification must Clearly and Conspicuously disclose all the information required by all the preceding sub-provisions of this Section and no marketing or other extraneous information; and

E. Including, in any communication required by this Section any other information that interferes with, detracts from, contradicts, or otherwise undermines the ability of consumers to perceive and understand the disclosures.

## V. CONSENT REQUIREMENTS FOR A NEGATIVE OPTION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from Charging or assisting others in Charging a consumer without express informed consent. In obtaining express informed consent, Defendants must:

A. Obtain the consumer's unambiguously affirmative consent to the Negative Option Feature offer separately from any other portion of the transaction, and:

1. For a written offer (including over the internet, such as through an app), obtain the required consent through a check box, signature, or other substantially similar method, which the consumer must select or sign to accept the Negative Option Feature;

2. For an oral consent, obtain unambiguous express oral confirmation that the consumer: (a) consents to being Charged for the product or service, including by providing, at a minimum, the last 4 digits of the consumer's account number to be charged; (b) understands the transaction includes the Negative Option Feature; and (c) understands the specific steps that the consumer must take to prevent or stop further Charges;

3. Present the consent request in a manner and format that is clear, unambiguous, nondeceptive, and free of any information not directly related to the consumer accepting the Negative Option Feature;

4. Not include any information that interferes with, detracts from, contradicts, or otherwise undermines the ability of the consumer to give or not give express informed consent to the Negative Option Feature;

5. Obtain the consumer's unambiguously affirmative consent to the rest of the transaction; and

6. Keep verification of the consumer's consent for at least 5 years after the contract is terminated, including audio recording of any related telephone calls in their entirety.

## VI. SIMPLE CANCELLATION OF NEGATIVE OPTION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

A. Failing to provide or require that a simple mechanism be provided to the consumer to cancel to avoid being Charged, or Charged an increased amount, for a good or service, and to immediately stop any subsequent or recurring Charge.

Such simple mechanism may be offered through a third-party App Store that distributes the good or service on behalf of Defendants, their officers, their employees, or their agents provided that all cancellation mechanisms must also:

1. Be at least as easy to find as the method the consumer used to initiate the Negative Option Feature.
2. Be provided, at a minimum, through the same medium (such as internet, telephone call or text, mail, or in-person) the consumer used to initiate to the Negative Option Feature, and:
    a. For internet cancellation, the consumer must be able to conveniently cancel through the same website, app, email, text or instant message the consumer used to initiate the Negative Option Feature;
    b. For telephone cancellation, consumers must be able to conveniently cancel by telephone call to a toll-free telephone number, and Defendants must ensure all calls to this number are answered promptly and accurately;
    c. For cancellation of an in-person sale, Defendants must offer the foregoing cancellation mechanisms by internet and telephone and, where practical, an in-person method similar in convenience to the consumer to that the consumer used to initiate the Negative Option Feature; and
    d. For any other sale, such as by U.S. mail, consumers must be able to conveniently use the mechanism through the same medium the consumer used to initiate the Negative Option Feature;

B. Failing to be at least as simple and easy to find and use as the method the consumer used to initiate the Negative Option Feature; and

C. Failing to immediately cancel the Negative Option Feature and stop all attendant charges upon request from a consumer.

## VII. REMINDERS OF A NEGATIVE OPTION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide consumers subject to a Charge through a Negative Option Feature a reminder:

A. Identifying the good or service, the frequency and amount of the Charges, and the instructions on how to avoid the Charges, including the simple mechanism to cancel;

B. At least annually and 3 days before the deadline to stop each charge for a Negative Option Feature;

C. At a minimum, through the same medium, such as internet (website, app notification, or email addresses), telephone, or mail, the consumer used to initiate the Negative Option Feature. For an in-person sale, the reminder must be provided through the internet or by telephone and, where practical, an in-person method similar in convenience to the consumer to that the consumer used to initiate the Negative Option Feature.

Such reminders may be provided by a third-party App Store that distributes the good or service on behalf of Defendants, their officers, their employees, or their agents provided that the reminders comply with the provisions of this Section.

## VIII. INJUNCTION CONCERNING THE COLLECTION OF PERSONAL INFORMATION FROM CHILDREN

IT IS FURTHER ORDERED that Defendants and Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or

participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with being an Operator of any Website or Online Service Directed to Children or of any website or online service with actual knowledge that it is Collecting or maintaining Personal Information from a Child, are hereby permanently restrained and enjoined from:

A. Failing to make reasonable efforts, taking into account available technology, to ensure that a Parent of a Child receives direct notice of the Operator's practices with regard to the Collection, use, or disclosure of Personal Information from Children, including notice of any material change in the Collection, use, or disclosure practices to which the Parent has previously consented, unless the COPPA Rule (attached as Appendix A), provides an exception to providing such notice;

B. Failing to post a prominent and clearly labeled link to an online notice of the Operator's information practices with regard to Children, if any, on the home or landing page or screen of its website or online service, and at each area of the website or online service where Personal Information is Collected from Children, unless the COPPA Rule (attached as Appendix A), provides an exception to providing such notice;

C. Failing to Obtain Verifiable Parental Consent before any Collection, use, or Disclosure of Personal Information from Children, including consent to any material change in the Collection, use, or Disclosure practices to which the Parent has previously consented, unless the COPPA Rule (attached as Appendix A), provides an exception to Obtaining Verifiable Parental Consent;

D. Failing to Delete a Child's Personal Information at the request of a Parent;

E. Retaining a Child's Personal Information for longer than is reasonably necessary to fulfill the purpose for which the information was Collected; and

F. Violating the COPPA Rule (attached as Appendix A).

## IX. INJUNCTION CONCERNING CHILDREN'S PERSONAL INFORMATION PREVIOUSLY COLLECTED

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, must:

A. Delete all Personal Information that is associated with any Messaging App user, unless:

1. The user has provided age information through a neutral age gate identifying the user as age 13 or older; or

2. Defendants have provided direct notice and Obtained Verifiable Parental Consent; and

B. Provide a written statement to the Commission, sworn under penalty of perjury, that:

1. Describes all processes through which Defendants provided direct notice and sought to Obtain Verifiable Parental Consent for any accounts covered by this Section;

2. Identifies the total number of accounts for which (a) direct notice was provided; (b) Defendants Obtained Verifiable Parental Consent; (c) Verifiable Parental Consent was affirmatively declined; and (d) no response was provided;

3. Describes in detail any Personal Information Defendants retain, the basis for such retention, and, as applicable, the specific government agency, law, regulation, or court order that requires such retention; and

4. Confirms that all Personal Information required to be deleted by this Section has been deleted.

## X. MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A. Judgment in the amount of Four Million, Five Hundred Thousand Dollars ($4,500,000.00) is entered in favor of Plaintiffs against Individual Defendants and the Corporate Defendant, jointly and severally, as monetary relief.

B. Defendants are ordered to pay Plaintiffs by making payment to Plaintiff the Federal Trade Commission in the amount of Four Million, Five Hundred Thousand Dollars ($4,500,000.00) which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to Plaintiffs. Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of Plaintiffs.

C. Judgment in the amount of Five Hundred Thousand Dollars ($500,000.00) is entered in favor of Plaintiff the People of the State of California, by and through the District Attorney of Los Angeles County against Individual Defendants and the Corporate Defendant, jointly and severally, as a civil penalty.

D. Defendants are ordered to pay Plaintiff the People of the State of California, by and through the District Attorney of Los Angeles County by making payment to Plaintiff the People of the State of California, by and through the District Attorney of Los Angeles County in the amount of Five Hundred Thousand Dollars ($500,000.00) which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to Plaintiff the People of the State of California, by and through the District Attorney of Los Angeles County. Such payment must be made within 7 days of entry of this Order by check payable to the Los Angeles County District Attorney's Office. All payments made to the

Los Angeles County District Attorney's Office pursuant to this Judgment shall be sent or delivered to:

Hoon Chun, Head Deputy District Attorney
Steven Wang, Deputy District Attorney
Consumer Protection Division
Los Angeles County District Attorney's Office
211 West Temple Street, 10th Floor
Los Angeles, CA 90012.

## XI. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendants agree that the civil penalty judgment represents a civil penalty owed to the Plaintiff the People of the State of California, by and through the District Attorney of Los Angeles County, is not compensation for actual

pecuniary loss, and, therefore, as to the Individual Defendants, it is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

E. Each Defendant acknowledges that Defendant's Employer Identification Number, Social Security Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defendants previously provided, may be used by Plaintiffs for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. §7701. All money received by the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after such redress is completed, the Commission may apply any remaining money for such related relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for relief is to be deposited with the Los Angeles County District Attorney as an additional civil penalty. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## XII. CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information, to the extent such information is in the possession of the Defendants, to enable the Commission to efficiently administer consumer redress. If a representative of the Commission

requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B. Failing to submit a request to any third-party service utilized by Defendants to Charge consumers, such as an App Store, that the third-party service or App Store provide refunds to an identified group of customers if requested by the Commission to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing that Defendants contact a third-party service or App Store to offer refunds to an identified group of customers, Defendants must do so within 14 days of receiving the Commission's request.

C. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, Instagram usernames, Snapchat usernames, and X/Twitter usernames, IP addresses, other identifying information, or any data that enables access to a customer's account (including an App Store account, credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the NGL App or NGL Pro.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XIII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A. Each Defendant, within 10 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly and the Corporate Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 10 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A. 1 year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1. Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of Plaintiffs may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, the terms of each Negative Option Feature (if

any) used in connection with the business, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2. Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B. For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of the Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for

which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C. Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "FTC v. NGL Labs, FTC Matter No. 2223144."

## XV. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, the Corporate Defendant and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A. Accounting records showing the revenues from all goods or services sold;

B. Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E. A copy of each unique advertisement or other marketing material;

F. A digital version showing each screen of the consumer's digital experience, related to an agreement to, or any effort to cancel, a Negative Option Feature, including everything behind a link, hover-over, tooltip, or the like; and

G. A copy of any research on consumer behavior related to a Negative Option Feature, such as potential enrollment or cancellation, including market, behavioral, or psychological research; copy testing, surveys, focus groups, or interviews; or customer, user, or usability testing, including A/B or multivariate testing, clickstream analysis, eye or mouse tracking studies, session recordings, or similar.

**XVI. COMPLIANCE MONITORING**

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order:

A. Within 14 days of receipt of a written request from a representative of either of the Plaintiffs, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection And copying. Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30

(including telephonic depositions), 31, 33, 34, 36, 45, and 69 provided that Defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B. For matters concerning this Order, Plaintiffs are authorized to communicate directly with each Defendant. Defendant must permit representatives of Plaintiffs to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of either of the Plaintiffs, any consumer reporting agency must furnish consumer reports concerning Individual Defendants pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

\\\

\\\

\\\

\\\

\\\

**SO STIPULATED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

Date: July 9, 2024

MILES D. FREEMAN
CARLA L. CHEUNG
SIOBHAN C. AMIN
JOHN D. JACOBS
Attorneys
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380

**FOR PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA**

Date: July 9, 2024

HOON CHUN, SBN 123516
Head Deputy District Attorney
hchun@da.lacounty.gov
STEVEN WANG, SBN 221950
Deputy District Attorney
swang@da.lacounty.gov
OFFICE OF LOS ANGELES
COUNTY DISTRICT ATTORNEY
GEORGE GASCÓN
211 West Temple Street, Suite 1000
Los Angeles, CA 90012
Tel: (213) 257-2450
Fax: (213) 633-0996

**FOR DEFENDANTS NGL LABS, LLC, RAJ VIR, & JOAO FIGUEIREDO:**

/s/ [signature] Date: 6/13/24

Jennifer Archie
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
Fax: 202-637-2201
Email: jennifer.archie@lw.com

Alex Wyman
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: 213-485-1234
Fax: 213-891-8763
Email: alex.wyman@lw.com

**DEFENDANT NGL LABS, LLC:**

Date: 6-13-2024

Name: Raj Vir
Title: Chief Executive Officer
NGL Labs, LLC

**DEFENDANT RAJ VIR:**

Date: 6-13-2024

Raj Vir

**DEFENDANT JOAO FIGUEREIDO:**

Date: 06-13-2024

Joao Figueiredo